**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x
: 
E.G., a minor, on behalf of himself and all : 
others similarly situated,                        :           Case No.: 1:25-cv-07359
:
*Plaintiff*,                            :
:
v.                                                         :           **CLASS ACTION COMPLAINT**
:
THE WALT DISNEY COMPANY,          :           DEMAND FOR JURY TRIAL
DISNEY WORLDWIDE SERVICES, INC., :
and DISNEY ENTERTAINMENT             :
OPERATIONS LLC,                            :
:
*Defendants.*                         :
————————————————————— x

Plaintiff E.G., a minor, ("Plaintiff") brings this class action complaint (the "Action") on behalf of himself and all others similarly situated against Defendants The Walt Disney Company, Disney Worldwide Services, Inc. and Disney Entertainment Operations LLC (collectively, the "Defendant" or "Disney") for violations of federal, state, and common law upon personal knowledge as to himself and his own actions, upon information and belief and upon the investigation of counsel, seeking actual damages, statutory damages, restitution, disgorgement of profit into a constructive trust, pre- and post-judgment interest, reasonable costs and attorneys' fees, a declaratory judgment, injunctive relief and any other relief this Court deems just and proper, and alleges as follows:

## INTRODUCTION

1.     Plaintiff and Class members are minor children from January 1, 2020 through the present day (the "Class Period") who have consumed Defendant's YouTube videos which were not adequately marked as being '*made for kids*' ("MFK") on Defendant's various YouTube channels and which resulted in children having their data being used for targeted advertisements by third parties as well as those same minors being served advertisements by Defendant itself in violation of federal, state and common law causes of action.

2.     By way of background, when a content creator, like Defendant, uploads videos to their channel or channels on YouTube to be played (or "streamed"), each video which is produced for consumption by children can designated by default as '*not made for kids*' ("NMFK").  The implications of a NMFK designation are that YouTube will keep certain features appropriate for adults active on that specific YouTube video, namely: (1) *the use of targeted advertising* (which is a feature that collects personal information and viewing preferences to allow third parties to serve advertisements to respective YouTube users), (2) *the authoring and reviewability of*

*comments* (which is a feature where other YouTube users can offer remarks under videos), as well as (3) *the use of "autoplay"* (which allows YouTube to use personal information and viewing preferences to choose content for that respective YouTube user which would follow immediately after the videos the user selected initially).

3.    In contrast, when videos are designated as MFK, those YouTube videos are in a separate category which forbids personal information for targeted ads and autoplay (as well as access to comments) so that the content creator (and YouTube) abide by online digital privacy and consumer protection laws and other regulations intended to protect children from data collection, such as the Children's Online Privacy Protection Act of 1998 ("COPPA").  These laws exist to eliminate the ability of digital marketplaces, websites, and streaming services to collect personal information and viewing preferences from children for the purpose of targeted advertising.

4.    Defendant failed to abide by these safeguards.  While Defendant was warned about this behavior and its potential legal ramifications by YouTube, Defendant continued to press forward with a companywide policy which allowed it to persist.  Defendant's popularity as well as its sophistication as a multinational corporation necessitates Defendant's cognizance of and compliance with online data privacy laws and YouTube's enforcement policies.  However, the conduct as alleged herein evidences an intentional indifference to the protection of their primary consumer base: children.  Defendant's popularity compounds this harm.[1]

5.    Digital targeted ads produce a lucrative revenue stream for both YouTube and content creators, like Defendant; however, the monetization of the online data of children is

_____

[1] For example, during the first three months of COVID-19 beginning in March 2020 alone, Disney's YouTube videos targeted toward children reached over 1.2 billion views in the United States.

precisely the type of conduct that the violations of law in this privacy class action were intended to protect against.

6.      The viewing of these videos, as well as the collection of personal information and other data related to viewership of videos on YouTube's platform came with a reasonable expectation of privacy that exists due to the type of data that could be collected.  And, because Plaintiff and Class members are children, the victims of this conduct are entitled to a heightened level of privacy upon viewing these types of videos.  At bottom, this is especially true here, where parents did not anticipate, invite or adequately consent to the presence of other third-party corporations looking over their child's digital shoulders as they watched Disney videos which were targeted toward children.  Defendant's conduct has also drawn public scrutiny as well as a parallel litigation by the Federal Trade Commission.[2]

7.      Against this backdrop, Plaintiff, on behalf of himself and all others similarly situated, seeks to rectify these data privacy harms under federal, state, and common law causes of action, pursuing actual damages, statutory and/or liquidated damages, restitution, disgorgement of profit into a constructive trust, pre- and post-judgment interest, reasonable costs and attorneys' fees, a declaratory judgment, injunctive relief and any other relief this Court deems just and proper.

## JURISDICTION AND VENUE

8.      This action arises under federal, state and common law. Specifically, Plaintiff and Class members seek relief under the Video Privacy Protection Act (18 U.S.C. § 2710, *et seq*.), including: statutory and/or liquidated damages, costs of suit, reasonable attorneys' fees, as well

---

[2] *See, United States of America v. Disney Worldwide Services, Inc. and Disney Entertainment Operations LLC*, Case No. 2:25-cv-08223 (C.D. Ca. Sept. 2, 2025), at ECF No. 1 (the "*FTC Action*").

as any other appropriate relief permitted by statute.  With respect to state and common law violations, Plaintiff and Class members seek declaratory and injunctive relief, as well as a measure of damages (including punitive or exemplary damages, as well as statutory and trebled damages), disgorgement of profit into a constructive trust, costs of suit, pre- and post-judgment interest and reasonable attorneys' fees, as this Court deems necessary and proper.

9.    *Subject Matter and Supplemental Jurisdiction.* Plaintiff brings this Action under the Video Privacy Protection Act (18 U.S.C. § 2710, *et seq*.) such that subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1337(a), and 1367.  This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337 because Plaintiff asserts claims arising under federal law.  Additionally, this Court has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367 because all claims arise from the same facts and circumstances and form part of the same case or controversy.

10.    Furthermore, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Pursuant to CAFA, the amount in controversy well exceeds the sum of $5,000,000 exclusive of interests and costs, there are over 100 putative Class members, and minimal diversity exists because one or more putative Class members are citizens of a different state than at least one Defendant.    Namely, Plaintiff is domiciled in Georgia whereas one of the Defendants is headquartered in both California and New York.

11.    *Personal Jurisdiction.*  This Court has personal jurisdiction over the litigants because Defendant maintains a headquarters in New York (which contains Defendant's streaming and video line of business operations), Defendant's acts or practices were directed toward this State (Defendant thus intentionally availed itself of this jurisdiction by choosing to do business

here), Defendant is registered to do business in New York, and Defendant knew or should have known that their conduct as alleged herein would impact minor children in this State, as their website is used throughout the United States, including here.

12. *Venue.* Venue is proper because the Defendant conducts business in this District, Defendant has a headquarters located in this District, Defendant's acts or omissions were directed toward this District and, because Class members were harmed here, and a substantial part of the events, acts and omissions giving rise to Class members' claims occurred here.

## PARTIES

## PLAINTIFF

### Plaintiff E.G.

13. Plaintiff E.G., a minor under the age of 13, is domiciled in Richmond County, Georgia.

14. During the relevant period, Plaintiff E.G. has regularly visited Defendant's YouTube channels to watch Disney's online content, including (but not limited to) Mickey Mouse Clubhouse. While on Defendant's YouTube channel, Plaintiff E.G. was entirely unaware that he was being surreptitiously having his personal information and viewing data tracked and collected for targeting advertising purposes. Notably, Plaintiff E.G.'s parent often saw advertisements which were marketed toward E.G. during E.G.'s consumption of Defendant's content on various YouTube channels – the types of content and subject matter at-issue in these advertisements normally would have been targeted toward adults as well as for children.

15. Plaintiff E.G. has suffered the following from (1) the interception of his private and valuable data despite the fact that he is a minor, (2) the disclosure of his private and valuable

data for targeted advertising, and (3) the loss of value of his personal information and viewing data from which Disney unlawfully profited.

## DEFENDANTS

### *Defendant The Walt Disney Company*

16.    Defendant The Walt Disney Company is a Delaware corporation with its principal place of business located in Burbank, California as well as in New York, New York.

### *Defendant Disney Worldwide Services, Inc.*

17.    Defendant Disney Worldwide Services, Inc. is a Florida corporation with its principal place of business located in Lake Buena Vista, Florida.  Defendant Disney Worldwide Services, Inc. is an affiliate, subsidiary, or otherwise related entity to Defendant The Walt Disney Company.

### *Defendant Disney Entertainment Operations LLC*

18.    Defendant Disney Entertainment Operations LLC is a Florida limited liability company with its principal place of business located in Burbank, California.  Defendant Disney Worldwide Services, Inc. is an affiliate, subsidiary, or otherwise related entity to Defendant The Walt Disney Company.

## FACTUAL ALLEGATIONS

### *Background*

19.    Founded in 1923 by Walt and Roy Disney, Defendant is one of the largest and most well-known corporations in the United States with over 225,000 employees as well as an annual revenue in excess of $91 billion.

20.    Defendant initially rose to popularity through multiple lines of business, including its cartoon shows which were geared toward a specific viewership: children.  In the century that

has passed, Defendant has become a ubiquitous presence in the homes of millions of Americans serving numerous different lines of business but remaining true to the production of television and viewing content for children.

21.    As times have changed, so has Defendant.

22.    Whereas Defendant once produced only a handful of specific shows as grainy, low-quality hand-drawn cartoons, Defendant now has dozens of different programs and shows which are streamed through digital platforms powered by the internet.  One such platform is called YouTube which is owned by Google.

23.    Today, YouTube is almost as well-known as Defendant is.  Hundreds of millions of Americans use YouTube on an annual basis to stream videos uploaded by content creators, including music videos, television shows, movies, and live cable programs.  One of YouTube's major source of revenues is derived from its targeted advertising model which allows creators of content, such as Defendant, to profit from and share revenues from advertising spending associated with commercials and links which appear during the viewing of video content on YouTube's digital platform.

24.    Children comprise a major constituency on YouTube's platform, as over 80% of parents report that their children age 11 or younger watch videos on YouTube.



## Most parents of young children say their child watches videos on YouTube ...

*% of U.S. parents of a child age 11 or younger who say ...*



## ... and among this group, roughly half say their child does this on a daily basis

*Among parents of a child age 11 or younger who say their child watches videos on YouTube, % who say their child does so ...*

| Several times a day | Once a day | A few times a week | Every few weeks | Less often |
|---|---|---|---|---|
| 35 | 19 | 31 | 11 | 5 |

**NET Daily 53%**

Note: If parent has multiple children, they were asked to focus on one child when answering this question. Those who did not give an answer are not shown.
Source: Survey of U.S. adults conducted March 2-15, 2020.
"Parenting Children in the Age of Screens"

**PEW RESEARCH CENTER**

25.    Indeed, according to research (above), at least half of parents report that their children aged 11 and under watch videos on YouTube daily.  Because such a large population of children watch videos on YouTube, YouTube has certain policies in place to protect children that use its platform.  These policies, which are intended to abide by a patchwork of children's privacy and consumer protection laws, include the designation of creator content, like Defendant's videos, to be categorized as either MFK or NMFK.  This practice began in November 2019, when creators, including Defendant, were told that they would be "required to tell [YouTube] if content is made for kids in order to comply with [COPPA]."

8

26.     This is a critical designation for YouTube to know which functionalities to provide for videos which are geared toward children.  Content creators, such as Defendant, are given the option to set their entire channel as MFK to comply with YouTube's policies:

Basic info        Advanced settings        Feature eligibility

## Audience

Simplify your workflow by selecting a channel setting. If you skip this question, you'll be required to identify each video on your channel that's made for kids. This setting will affect existing and future videos. Settings for individual videos will override the channel setting.

## Do you want to set your channel as made for kids?

Regardless of your location, you're legally required to comply with the Children's Online Privacy Protection Act (COPPA) and/or other laws. You're required to tell us whether your videos are made for kids. What's content made for kids?

○ Yes, set this channel as made for kids. I always upload content that's made for kids.

◉ No, set this channel as not made for kids. I never upload content that's made for kids.

○ I want to review this setting for every video.

27.     Marking videos as NMFK has important implications.  Notably, NMFK videos uploaded by content creators will keep certain features active on that specific YouTube channel's videos, including:

    a.    the use of targeted advertising, which is a feature that collects personal information and viewing preferences to allow third parties to serve advertisements to respective YouTube users;

b.  the authoring and reviewability of comments, which is a feature where other YouTube users can offer remarks under videos; and,

c.  the use of "autoplay," which allows YouTube to use personal information and viewing preferences to choose content for that respective YouTube user which would follow immediately after the videos the user selected initially.

28.    Alternatively, when a channel (and thus, its videos) are designated as MFK, YouTube eliminates the ability for those viewers (who are children) to have their personal information and viewing preferences collected in the form of data for purposes of targeted advertising and for autoplay, as well as those children having utilization and exposure to comment sections under YouTube videos.

### *Disney's Breach of Digital Privacy Laws*

29.    Defendant uploads a significant number of videos to numerous channels which are owned by Defendant.  For example, one channel is Defendant's "Disney" YouTube channel which has more than 6.4 million current subscribers with 1,277 videos.  This specific YouTube channel, which was created on February 11, 2012, has over 1 billion views on its videos. Defendant's viewership on YouTube is even more expansive because it has dozens of YouTube channels under a variety of names which all have a number of YouTube videos on them.

30.    According to the Federal Trade Commission, Defendant's corporate policy is that it "sets the audience designation for a channel as MFK or NMFK and adheres to the designation when uploading individual videos to [a particular Defendant-owned] channel."  Pursuant to this policy, "when a video is uploaded to a channel Disney has designated as NMFK, Disney would allow the video to remain by default designated as NMFK, even if the video were child-directed."

The result of this conduct is that Defendant fails to properly designate a significant number of its channels (and, therefore, its videos) as NMFK.

31.    For example, there are videos on the following YouTube channels owned by Defendant which are marked as NMFK:

    a.  Pixar;

    b.  Disney Plus;

    c.  Walt Disney Studios;

    d.  Disney Animation Studios;

    e.  Disney Movies;

    f.  Disney on Ice;

    g.  Disney Channel;

    h.  Oh My Disney;

    i.  Disney on Broadway; and

    j.  Disney D23.

32.    All of these channels contain a large number of videos which are marketed toward children under age 13, like Plaintiff and Class members.  This, according to the Federal Trade Commission, "is evidenced by factors such as the videos' subject matter – such as stories being read aloud by characters and celebrities who appeal to children" and "[t]he child directed nature of videos on the above-named channels is also evidenced by the visual content, inclusion of music popular with children, language, and other characteristics of videos."

33.    For example, many of these videos contain cartoons of popular characters such as Mickey Mouse, and other key characters from the movies such as *Frozen*, *Moana*, *Cars*, *Toy Story*, *Ratatouille*, *Encanto*, and others.  Additionally, channels include playlists with other

11

content related to characters from these movies, as well as sing-alongs and story times with actors who read children's stories.

34.     The failure to properly mark YouTube videos marketed toward children as MFK was brought to Defendant's attention as early as June of 2020, when YouTube informed Defendant that it manually changed the designations from NMFK to MFK on over three hundred of Defendant's YouTube videos.

35.     According to the Federal Trade Commission, despite this, Defendant did not revise its policy of designating videos appropriately on channels designated by default as MFK. Indeed, Defendant doubled down. Between 2020 and 2022, for example, Defendant continued to upload videos as such and continued to fail to designate all of its child-directed videos as MFK.

### *Harm to Plaintiff and Class Members*

36.     Defendant's failure to properly designate its child-directed videos as MFK results in YouTube collecting personal information and placing targeted advertisements on these videos on behalf of Defendant. Additionally, Defendant directly placed advertising on its videos on YouTube as well.

37.     Defendant's designation of videos as NMFK on MFK channels deviated from Defendant's policies that all videos designated as MFK must also be marked as MFK.

38.     As a result of Defendant's conduct, Plaintiff and Class members had their personal information and viewing habits collected when they viewed videos which were directed toward children but which were not designated by Defendant as MFK – resulting in children being exposed to at least twelve different ad campaigns with over 350,000 ad impressions on channels which were marked as MFK.

*Tolling and Concealment*

39.     The earliest Plaintiff and Class members, as well as their parents, could have discovered Defendant's conduct was shortly before the filing of this Action by way of the Federal Trade Commission action.    Plaintiff became aware of Defendant's conduct through communications with counsel which are protected from disclosure.

40.     Plaintiff and Class members, despite their due diligence, could not have discovered Defendant's conduct by virtue of how Defendant's labeling of YouTube videos on its channels as either MFK or NMFK works, as well as Defendant's lack of adequate disclosures and the failure to be informed by Defendant that it was collecting data from Plaintiff and Class members in violation of federal, state and common laws.

41.     Defendant's collection of personal information through the YouTube platform, happens inconspicuously in the background.  This process is undetectable to an ordinary person; it is highly technical, and it prevents Plaintiff and Class members (especially children) from discovering it.

42.     Defendant had exclusive knowledge that Defendant's mislabeled its own videos' viewing designations.

43.     Defendant's fraudulent conduct prevented Plaintiffs and Class members from discovering its conduct, which began as late as November of 2019.

44.     Defendant was under a duty to disclose the nature and significance of its personal information and data interception through the video designation process – especially considering its primary consumer base is comprised of children – but failed to do so.  Defendant, therefore, is estopped from relying on any statute of limitations by virtue of the discovery rule and doctrine of fraudulent concealment.

## CLASS ACTION ALLEGATIONS

45.     This Action is properly maintainable as a class action pursuant to Federal Rule of

Civil Procedure 23, Rules 23(a), 23(b)(1) and 23(b)(2).  Plaintiff brings this class action on behalf

of himself and all other similarly situated individuals.  The class which Plaintiff seeks to represent

is defined as follows

> **Nationwide Class:** All minor children under the age of 13 residing in the United
> States during the applicable statutory period who accessed YouTube content
> uploaded by Defendant which was targeted toward children and was not adequately
> marked as MFK, resulting in the collection of personal information and/or exposure
> to digital advertising.

46.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action

and any members of their immediate families; (2) the Defendant, Defendant's subsidiaries,

affiliates, parents, successors, predecessors, and any entity in which the Defendant or its parents

have a controlling interest and their current or former employees, officers, and directors; and (3)

Plaintiff's counsel and Defendant's counsel.

47.     *Numerosity*.  The exact number of members of the Class is unknown and

unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class

likely consists of many millions of individuals, and the members can be identified through

Defendant's records.

48.     *Predominant Common Questions*.  The Class's claims present common questions

of law and fact, and those questions predominate over any questions that may affect individual

Class members. Common questions for the Class include, but are not limited to, the following:

    a.  Whether Defendant violated Plaintiff's and Class members' privacy rights under

        the Video Privacy Protection Act;

     b.   Whether Defendant's acts and practices violated state consumer protection laws;

     c.   Whether Defendant was unjustly enriched;

     d.   Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief, restitution, and disgorgement; and,

     e.   Whether Plaintiff and the Class are entitled to actual, statutory, punitive and/or other forms of damages, and other monetary relief.

49.    *Typicality*.  Plaintiff's claims are typical of the claims of the other members of the claims of Plaintiff and the members of the Class arise from the same conduct by Defendant and are based on the same legal theories.

50.    *Adequate Representation*.  Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations.  Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendant has no defenses unique to any Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiff nor his counsel have any interest adverse to the interests of the other members of the Class.

51.    This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

52.     Plaintiff may revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## COUNT ONE

VIOLATIONS OF THE VIDEO PRIVACY PROTECTION ACT

18 U.S.C. § 2710 *et seq.*

(ON BEHALF OF THE NATIONWIDE CLASS)

53.     Plaintiff re-alleges and incorporates paragraphs 1 through 52 with the same force and effect as if fully restated herein.

54.     Plaintiff and Class members are each a "consumer" under the VPPA because they use YouTube to access Defendant's videos and either purchase, subscribe, or view Defendant's content on YouTube through Defendant's various YouTube channels.

55.     Defendant is "[a] video tape service provider" under the VPPA because Defendant "is engaged in the business, or in affecting interstate commerce or foreign commerce, of rental, sale, or delivery of … audio visual materials."  18 U.S.C. § 2710(a)(4).  Additionally, in numerous cases asserting causes of action under the VPPA, courts have recognized that streaming platform providers fall under the definition of a "video tape service provider,"

56.     Under the VPPA, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer, shall be liable to the aggrieved person[.]" 18. U.S.C. § 2710(b).

57.     The Video Privacy Protection Act ("VPPA") makes it illegal to collect and disclose to third parties its users' personal information, which is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider." 18 U.S.C. § 2710(a)(3).  Specifically, as alleged herein, Defendant knowingly collects

the personal information of children under the age of 13, including Plaintiff and Class members, and uses and retains that personal information for its own profit. Defendant also discloses this personal information to third parties which also serve targeted advertisements to Plaintiff and Class members based on that personal information.

58.     VPPA provides a private right of action to any person whose electronic communications are intercepted. 18 U.S.C. § 2710(c)(1).

59.     Defendant disclosed personal information to third parties, and therefore violated VPPA. Additionally, Defendant acted with the intent to acquire, use, and disclose Plaintiff's and the Class members' personal information without authorization or consent.

60.     Plaintiff and the Class members have suffered damages because of Defendant's violations of the VPPA, including that (1) Defendant eroded the essential, confidential nature of the relationship between Defendant and its customers, (2) Defendant failed to provide Plaintiff and the Class members with the full value of the services for which was paid, which included a duty to maintain confidentiality and protect privacy, (3) Defendant derived valuable benefits from using and sharing Plaintiff's and the Class members' personal information without their knowledge or informed consent and without providing compensation (including through profits from targeted advertising as well as the viewership benefits of advertising which led to Defendant's own streaming videos on YouTube channels owned by Defendant), (4) Defendant's actions deprived Plaintiff and the Class members of the value of their PII, (5) Defendant's actions diminished the value of Plaintiff's and the Class members' property rights in their PII; and (6) Defendant violated Plaintiff's and the Class members' privacy rights by sharing their PII for commercial use.

61.     Plaintiff and the Class members seek appropriate declaratory or equitable relief

17

including injunctive relief, actual damages and profits enjoyed by Defendant as a result of violations or the appropriate statutory measure of damages, including $2,500 per violation of the VPPA, as well as punitive damages, and reasonable attorneys' fees and costs.

62.    Unless enjoined, Defendant will continue to commit the violations of law described herein; the VPPA provides for injunctive relief and declaratory relief as deemed appropriate.  18 U.S.C. § 2710(c)(2).

## COUNT TWO

VIOLATIONS OF CONSUMER PROTECTION LAWS

NEW YORK GENERAL BUSINESS LAW § 349

(ON BEHALF OF THE NATIONWIDE CLASS)

63.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 with the same force and effect as if fully stated herein.

64.    Defendant is considered a "business" under state law.

65.    Defendant's business acts and practices are unfair and deceptive under the New York General Business Law § 349 (N.Y. GBL § 349).

66.    N.Y. GBL § 349 makes illegal unfair methods of competition, unconscionable acts or practices, unfair acts, and deceptive acts or practices in the conduct of any trade or commerce.

67.    New York (as well as other states through their respective unfair and deceptive trade practices statutes) has a strong public policy of protecting consumers' privacy interests, especially including protecting consumers' personal data who are minor children.  Defendant violated N.Y. GBL § 349 by, among other things, collecting, disclosing and intercepting Plaintiff's and Class members' sensitive data without consent as well as serving targeted advertisements to children.

68.     Additionally, Defendant further engaged in unfair business practices because it failed to provide notice of as well as misrepresented and concealed from parents of Plaintiff and Class members the nature of the data it was collecting, the transmission of that data to third parties, the identities of those third parties, and the purpose of the disclosure.

69.     Defendant's business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The gravity of the harm of Defendant secretly collecting, disclosing, intercepting, and misusing the sensitive and highly valuable personal data of minor children, including of Plaintiff and Class members, is significant, and there is no corresponding benefit resulting from such conduct.  Finally, because Plaintiff and Class members were completely unaware of Defendant's conduct, especially because they are children, Plaintiff and Class members could not have possibly avoided the harm.

70.     By unlawfully collecting and intercepting, as well as disclosing and this data, Defendant took money or property from Plaintiff and Class members.

71.     Plaintiff and the Class members suffered damages as a result of Defendant's N.Y. GBL § 349 violations.  Additionally, in the event a nationwide class cannot be maintained, Class members seek relief under every substantially similar consumer protection statute for the claims as alleged in this Action.

72.     On behalf of himself and the Nationwide Class, Plaintiff seeks all available damages including actual damages, statutory damages in the form of $50 per violation, as well as treble damages, reasonable costs of suit and attorneys' fees.

## COUNT THREE

NEGLIGENCE/NEGLIGENCE PER SE

(ON BEHALF OF THE NATIONWIDE CLASS)

73.     Plaintiff re-alleges and incorporates paragraphs 1 through 52 with the same force and effect as if fully restated herein.

74.     Plaintiff and Class members had their personal information collected by Defendant because of the failure to properly designate Defendant's YouTube videos targeted toward children on Defendant's YouTube channel as MFK.  While this conduct by Defendant was intentional as alleged, it was at a minimum, and, in the alternative, negligent.

75.     By collecting, storing, using, and profiting from this data, Defendant owed a duty of care to Plaintiff and Class members to exercise reasonable care in keeping this information confidential.  This duty also arose as the result of a special relationship because of the nature of the relationship between Plaintiff and/or Class members and Defendant, as well as duties which are codified by federal statute, including COPPA and Section 5 of the Federal Trade Commission Act.

76.     Thus, Defendant had both statutory and common law duties to prevent foreseeable harm to Plaintiff and Class members.  These duties existed because Plaintiff and Class members were foreseeable and likely victims of any disclosure of this personal information sans adequate consent.

77.     Not only should Defendant not have collected personal information from Plaintiff and Class members at all, but once it did so, Defendant could have and should have ensured that it would not disclose Plaintiff's and Class members' personal information. Defendant knew or should have known that failing to properly designate its YouTube videos as either MFK or NMFK,

that it was systemically collecting and disclosing Class members' personal information to third parties. This is especially true because YouTube informed Defendant that it had to redesignate three hundred of its videos as MFK when they were improperly designated as NMFK.

78.     But for Defendant's conduct, Plaintiff's and Class members' personal information would not have been disclosed without consent. And, as a direct and proximate cause of this conduct, Plaintiff and Class members have been injured and are entitled to damages in an amount to be proven at trial.

79.     Plaintiff and Class members seek to recover the value of the unauthorized collection of and access to their personal information resulting from Defendant's wrongful conduct. The measure of damages in this instance is analogous to the unauthorized use of intellectual property. Like a technology covered by a patent or protected by a trade secret, use or access to a person's information is non-rivalrous – the unauthorized use by another does not diminish the rights-holders' ability to practice the patented invention or use the protected trade secret technology. Nevertheless, a plaintiff may generally recover the reasonable use value of their most valuable intellectual property: the quantitative value of their personal information. Here, where that personal information release into the hands of third parties can result in consequences for Plaintiff and Class members, especially minor children

80.     This measure is appropriate because (a) Plaintiff and Class members have a protectable property interest in their personal information; (b) the minimum damages value for the unauthorized use of personal property is its rental value; and (c) personal information's value is established with respect to market value (*i.e.,* evidence regarding the value of similar transactions). Put differently, the value of this data is equivalent to whatever the unauthorized third parties pay or would pay for that respective data.

81.    As such, Plaintiff seeks damages in an amount to be proven at trial.

82.    Plaintiff also seeks such other relief as the Court may deem just and proper.

83.    Where allowable, in addition to or alternatively to this count, Plaintiff pleads a Negligence Per Se count because Defendant's conduct violates the FTC Act and COPPA.

<u>**COUNT FOUR**</u>

UNJUST ENRICHMENT

(ON BEHALF OF THE NATIONWIDE CLASS)

84.    Plaintiff re-alleges and incorporates paragraphs 1 through 52 with the same force and effect as if fully restated herein.

85.    Defendant received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

86.    Defendant received benefits from Plaintiff and Class members in the form of the Plaintiff's and Class members' valuable personal information, including personal information and viewing preferences which Defendant wrongfully collected, disclosed and intercepted or allowed to be collected, disclosed, and intercepted from Plaintiff and Class members without authorization and proper compensation.

87.    Defendant collected, disclosed, intercepted, stored, and used this data for their own gain, providing Defendant and others with economic, intangible, and other benefits, including highly valuable data for targeted advertising.

88.    Had Plaintiff and Class members known of Defendant's misconduct, they (or their parents) would not have provided (or allowed to be provided) any of their valuable data to Defendant or have used or paid to use YouTube to access Defendant's channels.

89.    Defendant unjustly retained these benefits at the expense of Plaintiff and Class

members because Defendant's conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

90.    The benefits that Defendant derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable for Defendant to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

91.    Defendant should be compelled to disgorge profits into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully requests that the Court enter an order:

A.  Certifying the Class and appointing Plaintiff as the Class's representative;

B.  Finding that Defendant's conduct was unlawful, as alleged herein;

C.  Awarding declaratory relief against Defendant;

D.  Awarding such injunctive and other equitable relief as the Court deems just and proper, including injunctive relief;

E.  Awarding Plaintiff and Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profit;

F.  Awarding Plaintiff and Class members pre-judgment and post-judgment interest;

G.  Awarding Plaintiff and Class members reasonable attorneys' fees, costs, and expenses; and

H.  Granting such other relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

92.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a jury trial as to all issues triable by a jury.

**DATED**:    September 5, 2025

Respectfully submitted,

By: */s/ Blake Hunter Yagman*
Blake Hunter Yagman
**SPIRO HARRISON & NELSON**
40 Exchange Place, Suite 1100
New York, NY 10005
Tel.: (202) 557-1221
Fac.: (973) 232-0887
*byagman@shnlegal.com*

*Counsel for Plaintiff and the Proposed Class*